# FIFTH DISTRICT DECEMBER, 1897.

PARLIN & ORENDORFF COMPANY v. C. W. WEBSTER ET AL.

Delivered December 4, 1897.

**1. Guardian and Ward—Liability of Guardian Cultivating Ward's Land.**

A guardian cultivating a farm belonging to his wards, without an order of court therefor, and appropriating the proceeds to his own benefit, is liable to them for the reasonable value of the rents.

**2. Same—Crops Belong to Guardian.**

Crops raised by a guardian on a farm belonging to his wards, cultivated without an order of court, belong to the guardian, though raised chiefly by the labor of the wards, who are his minor children.

APPEAL from the County Court of Collin. Tried below before Hon. M. G. ABERNATHY.

*Harris, Etheridge & Knight,* for appellants.—1. The time, labor, and earnings of minor children, and the proceeds thereof, belong to the father, and the creditors of the father may proceed against such proceeds or earnings as against any other property of their debtor. Shuster v. Jewelry Co., 79 Texas, 183; Railway v. Evansich, 63 Texas, 56; Railway v. Morin, 66 Texas, 227; Railway v. Miller, 49 Texas, 322.

2. Where a guardian, without an order of court, appropriates to his own use or rents to another the improved lands of his wards, he is required to account to the estate of his wards for the reasonable value of the rent of such property during the time same was so used. Rev. Stats. 1895, arts. 2107, 2635.

*De Armond & Church,* for appellees.—1. When a father acts as guardian of his minor children his obligations do not differ in any material respect from those ordinarily assumed by guardians of the estates of minors. Buckley v. Howard, 35 Texas, 574.

2. When a guardian, without an order of court, does not rent the land of his wards, but the same is worked by them, they are entitled to the fruits of their labor.

3. The father, as the natural guardian of his wards, was bound by the obligations of law and morality to maintain and educate his children at his own expense, and the law gave him no right to shift the cost of these duties on to the inherited estate of his wards, much less did it give him the right to support himself out of the revenues of his ward's estate, and still less to apply said revenues to his private obligations.

RAINEY, ASSOCIATE JUSTICE.—This suit was instituted by C. W. Webster, guardian of Thomas W., Charles E., Owen R., and Josie Web-

ster, his minor children, against J. L. Moulden, sheriff of Collin County, Texas, and the sureties on his official bond, to recover the sum of $550 damages for the wrongful conversion by him of six bales of cotton alleged to be the property of said minors.

Said Moulden answered, alleging that he seized said property by virtue of a writ of attachment issued out of the District Court, Forty-fourth Judicial District of Texas, Dallas County; and that before making the levy Parlin & Orendorff Company executed to him an indemnity bond with William M. Roberts and T. J. Clark as sureties, and prayed that they be made parties, and that if judgment was recovered against him, he should have judgment over against said parties.

Parlin & Orendorff Company answered, denying that said wards had any interest in said cotton, and setting up said attachment proceedings. And also, that they had recovered judgment against the said C. W. Webster for the amount of its debt, with foreclosure of its attachment lien on said cotton, and that said cotton was duly sold and the proceeds applied to said judgment, leaving a balance still due of $600. Upon trial before a jury, plaintiff Webster recovered judgment for the sum of $249.26 against said sheriff, and judgment was also entered in favor of the sheriff and his bondsmen against appellant Parlin & Orendorff Company, from which judgment this appeal is prosecuted.

The facts show that C. W. Webster was the duly appointed guardian of his said minor children; and that as said guardian, under order of the probate court, he purchased eighty-eight acres of land with funds belonging to said minors, and the title was taken in their name. The cotton levied on was raised on said land, and was produced by the joint labor of C. W. Webster and his minor children, most of the work being done by the children, said guardian not being able to do much more than to superintend and manage. When the sheriff went to levy upon said cotton, there were seven bales lying in the yard, and C. W. Webster claimed that five bales of the cotton were his, and that two bales belonged to his children. He claimed the cotton as exempt, because raised on his homestead. The levy was made upon the five bales claimed by him, and also one other bale which was at the gin. On the trial Webster testified that the cotton belonged to his children, because it was raised on the children's land and raised by them.

The crops raised on the premises for 1890, 1891, 1892, 1894, 1895, and 1896 were used by said Webster in supporting himself and family; the crop for 1893 being the one levied upon. No order of the County Court was ever made authorizing C. W. Webster, as guardian, to cultivate the farm, nor did he ever account to said court for any of the crops raised upon said premises. The money invested in said farm was inherited by said children from their maternal grandfather some time in 1888. At that time their mother was dead; and besides the children heretofore mentioned, C. W. Webster and wife had a son living, whose name was Grover C. Webster. This son died, however, before the money was invested in said land. C. W. Webster filed an annual report as guardian, September

1, 1893, but in it he makes no mention of any cotton as a part of the assets of said wards' estate, and he stated in said report that he reported everything that he considered his children owned.

The main question in the case is, whether or not the cotton levied upon was subject to the individual debts of C. W. Webster? The contention of appellants is that the proceeds of the labor of the minor children belong to the father, and the creditors of the father may go against such proceeds as against any other property of the debtor; and further, "where a guardian, without an order of court, appropriates to his own use or rents to another improved land of his wards, he is only required to account to the estate of his wards for the reasonable value of the rent of such property during the time the same was so used." While on the other hand, appellees contend that where a guardian, without an order of court, does not rent the land of his wards, and the same is worked by them, they are entitled to the fruits of their labor; and further, that it is the duty of the father, as the natural guardian, to maintain and educate his children at his own expense, and that he had no right to shift the cost of these duties on the estate of his wards, etc.

The duty of a guardian in relation to the management of a farm and renting of real estate is found in title 51, chapter 9, Revised Statutes, 1895. Article 2633 provides: "If there be a farm, plantation, manufactory, or business belonging to the estate, and if the same be not required to be at once sold for the payment of debts, it shall be the duty of the guardian of such estate, upon an order of the court, to carry on such farm, plantation, manufactory, or business, or rent the same, as shall appear for the best interest of the estate." * * *

This is the only article that authorizes a guardian to carry on or rent a farm for his wards. It will be noted, that in order for him to do so, it must be upon an order of the court authorizing him to so act. Article 2635, Revised Statutes, provides: "The guardian may rent the improved property of the ward, other than such property as is named in article 2633, without an order of the court authorizing him to do so, and either at public or private renting, but when he rents without an order of court, he shall be required to account to the estate of the ward for the reasonable value of the rent of such property for the time the same was so rented."

Article 2558 provides: "The provisions, rules, and regulations which govern estates of decedents shall apply to and govern such guardianships, whenever the same are applicable and not inconsistent with any of the provisions of this title."

Article 2107 provides: "When an executor or administrator hires or rents property belonging to an estate without an order of the court authorizing him to do so, he shall be held responsible to the estate for the reasonable value of the hire or rent of such property, to be ascertained by the court by satisfactory evidence."

There is no provision of the statute which specifically prescribes the measure of a guardian's or administrator's liability where the farm is not rented, but appropriated by said guardian or administrator for their own

individual use. It seems to us, however, that the liability should be the reasonable rental value of said farm. No authority has been cited by either party, nor have we been able to find any by the courts of this State prescribing a rule of liability in such cases. In the case of Oglesby v. Foreman, 77 Texas, 647, it is held that an administrator who leases a farm without authority of an order of court is liable for the reasonable value of the rents. This, however, is nothing more than what the statute prescribes in such cases. We are not without authority, however, from other States on this question. In the States of Wisconsin and Georgia, it is held that an administrator using the real property of the estate is responsible for the reasonable value of the rents thereof. Willis v. Fox, 25 Wis., 646; see also Royston v. Royston, 29 Ga., 82.

As contended for by appellants, the father is entitled to the proceeds of the labor of his minor children, so long as he maintains and educates them. There is no evidence in this case showing that the father did not maintain and educate his children, although they were required to labor for him; so the fact of their laboring to produce the cotton in question does not form any basis for the claim that it was their property. We think the title to the property rests upon the same basis as if the guardian had employed labor other than his children and paid other expenses incident thereto and raised the crop on said land. Under such circumstances, we think the cotton so raised would be the personal property of the guardian, and subject to his debts; and especially is this so where the guardian cultivated the land on his own account, and no pretense is made that it was being cultivated as guardian of his wards' estate. The policy of the law is, that a guardian or administrator shall not endanger the estate of his ward or intestate in carrying on any business in behalf of said estate without an order of the probate court. When he does so, he and his bondsmen become responsible to the estate for the reasonable rental value of the property, and losses incurred under such circumstances can in no sense be a charge against the estate. Of course, under certain circumsances, where the property of the estate has been used, they may be required to account for any profits that may have been made by the use thereof. But it is not necessary to enter into a discussion here of this question. Confining ourselves to the facts in this case, we think the guardian is liable to the wards for the reasonable rental value of the land in question; and that the cotton was subject to the levy of appellants' writ of attachment.

From what we have said, we deem it unnecessary to discuss in detail the other assignments of error made by appellants.

For the reasons above given, the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*